ARTHUR W. VIGUE
*vs.*

WARD B. CHAPMAN AND INA T. CHAPMAN.

Somerset.    Opinion, December 22, 1941.

*Harvey D. Eaton*, of Waterville, for plaintiff.

*Harvey H. Brazzell*, of Fairfield, for defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MURCHIE, J.   By writ of entry, the plaintiff here seeks to recover a parcel of land claimed by the defendants under conveyance from the inhabitants of the town in which the property is situate, executed on the basis of a title alleged to have been acquired under the operation of the Tax Lien Law, so-called, P. L. 1933, Chap. 244, as amended. The tax which laid the foundation for the lien was assessed against the plaintiff as

a non-resident owner of the property in 1937. A lien certificate in appropriate form was filed in the proper registry office April 4, 1938, and the record discloses that officers of the town took possession of the property October 4, 1939, and made conveyance to the defendants by deed dated March 2, 1940, which was recorded five days thereafter.

Plaintiff's claim of title is supported on the dual ground that the town officials did not comply strictly with all the requirements of law necessary to enforce a forfeiture for non-payment of taxes and that the statute in its application to the particular tax lien is unconstitutional because differences in statutory requirements applicable to resident proprietors, on the one hand, and to non-resident proprietors, on the other, represent a denial to the plaintiff, as a non-resident, of that *equal* process guaranteed by Article XIV of the Amendments to the Constitution of the United States wherein it is stated (Sec. 1) that no state "shall . . . deny to any person within its jurisdiction the equal protection of the laws." While it is not material to the present cause, where the rights of the parties must depend on the efficacy of a tax lien certificate filed in 1938, it may be noted that the differences in process applicable, as the law was originally written, to resident and to non-resident owners was eliminated by P. L. 1939, Chap. 85.

In *Inhabitants of the Town of Warren* v. *Norwood*, recently decided in this Court, (138 Me., 180, 24 A., 2d, 229), the question of the constitutionality of the law here challenged, in so far as it applies to resident taxpayers, was considered and determined affirmatively. The instant case raises a constitutional issue which was not there determined, but the rule there recognized, that "long and thoroughly established practice dictates that no question of constitutionality shall be passed upon except when entirely necessary to a decision of the cause in which it is raised," seems to preclude a present consideration of the equal process issue, since the proceedings taken to effect the forfeiture so clearly fell short of that "strict compliance with statutory requirements" which is necessary "to

divest property owners of their titles for non-payment of taxes." *Porter* v. *Whitney*, 1 Me., 306; *Brown* v. *Veazie*, 25 Me., 359; *Hobbs* v. *Clements*, 32 Me., 67; *Bowler* v. *Brown*, 84 Me., 376, 24 A., 870; *Baker* v. *Webber, et al.*, 102 Me., 414, 67 A., 144; *Inhabitants of the Town of Warren* v. *Norwood*, supra.

The record discloses that plaintiff acquired title to the locus in November, 1924, and, so far as any testimony in the cause appears, he is still the owner of it, unless the proceedings of the town intended to work a forfeiture were effective. The testimony shows that the taxes assessed against the property for the years 1936, 1937, 1938 and 1939 have not been paid, and that the enforcement proceedings related to a tax in the amount of $10.60 assessed in the year 1937. The lien certificate recites that the tax was committed for collection on June 12, 1937, which date, assuming a valid assessment and such commitment, was within the statutory time limit for such recording.

As was stated in *Inhabitants of the Town of Warren* v. *Norwood*, supra, the first question for consideration in any case involving a tax forfeiture is the assessment of the tax itself, since it is only by proper assessment that a lien can be created under the provisions of R. S. 1930, Chap. 13, Sec. 3, and unless a tax is properly assessed, it cannot create a lien available for enforcement by any form of process. *Greene* v. *Lunt*, 58 Me., 518; *Burgess* v. *Robinson*, 95 Me., 120, 49 A., 606.

The first requirement of a valid tax is the due election and qualification of those who assess it. In *Inhabitants of the Town of Warren* v. *Norwood*, supra, the court held that when a party contesting the validity of tax proceedings challenges the election and qualification of designated officials, examines the municipal records, selects excerpts dealing with the matters in dispute to be read into the testimony, and states that he raises no issue "as to other matters," it may be assumed that all action at the meeting, other than that covered by the excerpts so selected and made a part of the testimony, was properly taken

under the warrant by which the meeting was convened. The principle thus enunciated represents little extension, if any, of the rule of liberal construction which has always been applied to town meeting records. Almost of necessity town meeting action is recorded occasionally by those having little of experience either in law or in the interpretation of statutes, and it would be unwise to require a too meticulous care with reference to detail. In each of several decided cases heretofore, a record presented in court showing entry that a named officer was "elected," "chosen" or "chosen by ballot" was held sufficient notwithstanding failure to recite that the election or choice was "by ballot" or that the officer elected by ballot was named "by major vote." In each case the principle was applied that the record of an election, if not impeached, imports a legal choice. *Mussey* v. *White, et al.*, 3 Me., 290; *Blanchard* v. *Dow*, 32 Me., 557; *Hathaway* v. *Inhabitants of Addison*, 48 Me., 440; *Gerry* v. *Herrick*, 87 Me., 219, 32 A., 882; *Inhabitants of Wellington* v. *Inhabitants of Corinna*, 104 Me., 252, 71 A., 889.

The transcript now under consideration contains no excerpt from the municipal records showing either the election or the manner thereof, but counsel for the defendants, who rely upon the tax enforcement proceedings, sought to prove all such facts by verbal evidence alone. The town clerk testified (presumably refreshing his recollection from the town records, although the transcript shows that he referred to the record book which he produced in court in only two places, which related to the election of selectmen and assessors in 1936 and to the posting of the warrant for the 1937 meeting) as to who had been elected selectmen and assessors in 1936; the date of the warrant for the 1937 meeting; the names of the signers thereof, the date of that meeting; and who were elected selectmen and assessors in that year, in 1938 and in 1939. He was not asked, nor did he testify, as to the method of election, and his testimony as to qualification was given merely in one affirmative answer to an inquiry, which on the record may have

referred merely to the selectmen elected in 1939, since that was the last definite item of testimony preceding it, "and they were duly qualified as such." Whether or not the policy of liberal construction should be extended to permit this first step in securing money to meet the expenses of govenment by taxation to be proved in so unorthodox a manner it seems unnecessary to decide, because defendants' case must fail in any event on grounds hereinafter stated.

The principle of liberal construction for municipal records has been matched by a liberal policy of legislation designed to furnish support for tax titles which dates back to the general revision of our tax laws in 1844 (Chap. 123 of the Public Laws of that year). The first machinery for tax sales of the real property of resident proprietors established a rule of practice (Sec. 16 of said Act) which is not substantially different from our present law as contained in R. S. 1930, Chap. 14, Sec. 87, except that since 1895 (P. L. 1895, Chap. 70), the collector's return to the town clerk, the latter's record thereof; and in cases where such record is lost, an attested copy of the same, have been constituted prima facie evidence of all the facts therein set forth. A prima facie case for a tax title, claimed under a tax deed, could be made out then, as now, by production of the deed itself, and proof of the assessment, the commitment, and compliance with the statutory requirements of advertising and sale. In the interval between 1844 and the present, the legislature attempted to provide an even more liberal rule by a requirement, declared unconstitutional in *Bennett* v. *Davis,* 90 Me., 102, 37 A., 864, that one who sought to contest the validity of a tax deed should, before proceeding, pay into court an amount equal to the tax involved, plus interest and costs. This provision was declared invalid on the ground that it interfered with the right of free and unrestricted access to the courts of justice. The rule of practice as to the requirements of a prima facie case however has been upheld. *Inhabitants of Orono* v. *Veazie,* 57 Me., 517.

Defendants here sought to prove by the testimony of the

town clerk, not only the matters hereinbefore referred to, which related to the election of the officers charged with the duty of assessing and collecting the tax, but also such facts as the assessment of the tax itself, the filing of the lien certificate, the taking of possession of the locus, and the sale of the property to defendants. No verbal proof, even, was offered that the assessors signed either a tax assessment or a warrant of commitment of the same to a collector of taxes. It seems apparent that counsel for the defendants relied on the assumption that a tax lien certificate produced in court would have the same effect in creating a prima facie case for the validity of the tax proceedings involved and in proving the facts of assessment and commitment as are carried by a tax deed and a collector's return by statute. We know of no rule of construction which would justify the court in saying that legislative action adopted to regulate procedure in litigation relative to tax deeds shall apply with equal force to litigation over tax titles which depend on tax lien certificates. It seems necessary that the court hold, as originally declared in tax deed cases and as still applicable thereto except as changed by the statute aforesaid, that the recitals in a tax deed *unless made so by statute* are not evidence of the facts recited. *Worthing* v. *Webster*, 45 Me., 270, 71 Am. Dec., 543; *Phillips* v. *Sherman, and others*, 61 Me., 548; *Nason* v. *Ricker*, 63 Me., 381. Legislative action will be necessary to give such effect to the tax lien certificate authorized by the terms of the statute now under consideration.

The testimony as to the assessment of the tax shows that a selectman, in stating the amount of the tax, referred to an assessment book which carried a reference to a property book at a stated page (1545), and that he produced from another book a sheet purporting to be the designated page which gave a description of property substantially like that used both in the lien certificate and in the subsequent deed from the inhabitants of the town of the defendants. It was developed in cross-examination that the book from which the particular page was taken had no title page (so far as the witness knew) and no sig-

nature. Witness explained that the book from which the sheet was taken, or in which it was contained, was not the "property book" referred to in the assessment book, but a transfer book, and that it was the practice of the town officers, when a particular parcel of property was sold, to transfer the sheet containing the description thereof "into this so-called dead file" or "transferred property file." The record is absolutely devoid of proof that the assessors of the Town of Fairfield in 1937 ever signed a tax assessment against the locus or against any other property, or that they ever signed a warrant committing any taxes for collection. Note is made in *Cassidy* v. *Aroostook Hotels, Inc.*, 134 Me., 341, 180 A., 665, of the statutory requirements contained in R. S. 1930, Chap. 13, Sec. 81, that assessment and commitment must be *under the hands* (italics ours) of the assessors, and without proof that such formalities have been complied with in the assessment of taxes and their commitment for collection, any title based on the enforcement of a tax lien must fail.

The case having been submitted on report for final determination in this Court upon so much of the evidence as is legally admissible, the mandate must be

*Judgment for plaintiff.*